**Marvin Niles STUBBLEFIELD, Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.**

**No. 24088.**

United States Court of Appeals
Fifth Circuit.

July 24, 1968.

Joel J. Finer, Stanford, Cal., Philip Juarez, Austin, Tex., for appellant.

Allo B. Crow, Jr., Asst. Atty. Gen., Austin, Tex., for appellee.

Before BELL, COLEMAN, and GODBOLD, Circuit Judges.

PER CURIAM:

The question presented on this appeal from the denial of a petition for the writ of habeas corpus arises in an unusual context. Appellant is serving a life sentence by virtue of his third conviction of a felony less than capital. The third conviction was for burglary with the sentence having been enhanced to life on the basis of two prior felony convictions. See Art. 63, Texas Penal Code. The life sentence was imposed in 1959. The two prior felony convictions were for burglary in 1955 and for driving while intoxicated in 1950. This latter offense was deemed a felony under Texas law because of a 1948 conviction based on a plea of guilty to the misdemeanor charge of driving while intoxicated. See Art. 802b, Texas Penal Code.

No infirmity is alleged as to the prior felony convictions. Appellant's position is that he was denied counsel when he pleaded guilty to the misdemeanor charge in 1948. In the event he is able to sustain this view, the 1950 felony conviction for driving while intoxicated will fall and the life sentence will likewise fall because of the absence of the requisite number of prior felony convictions for enhancement.

The difficulty with appellant's position is that there is an adequate factual foundation for the conclusion reached by the District Court that he waived counsel when he entered his plea of guilty to the misdemeanor. The evidence was clear that appellant was not an indigent at the time. He had an income of approximately $6,000 per year from his business. He was arrested in Johnson County, Texas for driving while intoxicated and released on bond shortly thereafter upon the payment of $10.00 to a bondsman. He tes-

---

tified on the habeas hearing that the County Court of Johnson County did not inform him that he might or might not have a lawyer. He stated that the court said to him only that his fine was $50.00. He testified with respect to the County Court proceeding: " * * * I didn't see a reason for hiring a lawyer when I could pay the fifty dollars and get turned a-loose." The County Court records reflect only that " * * * defendant pleaded guilty as charged, after being reminded by the judge of his rights."

In the view we take of the case, which is that there was intelligent and competent waiver of counsel by appellant, Johnson v. Zerbst, 1938, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461, we do not reach the further question of whether our decisions in McDonald v. Moore, 5 Cir., 1965, 353 F.2d 106; and Harvey v. State of Mississippi, 5 Cir., 1965, 340 F.2d 263, would afford appellant a basis for claiming a Sixth Amendment right to counsel when he was tried by the County Court in 1948.

Affirmed.

GODBOLD, Circuit Judge (dissenting):

I respectfully dissent. The standards of the Sixth Amendment requiring assistance of counsel in a criminal case, read into the Fourteenth Amendment, have not been met in this case.

The appellant, who has been through the third grade in school, is under a man-datory life sentence imposed by Texas law in 1959 on conviction of a third non-capital felony.[1] If the 1948 misdemeanor conviction, entered on a waiver of jury trial and plea of guilty without counsel, did not meet constitutional standards the appellant's mandatory life sentence is not valid. The 1948 drunk driving conviction became eleven years later the trigger device for life imprisonment.

The critical Findings of Fact and Conclusions of Law concerning the 1948 trial are set out in the margin.[2] The habeas court decided specifically that appellant effectively waived counsel and inferentially that he was not entitled to offer of appointive counsel because he was not indigent. The decision of the majority in this court is based on the sole ground of waiver.

The 1948 conviction was under what is now Texas Penal Code art. 802 (Vernon ed. 1961). The range of punishment in 1948 was confinement in the county jail for not less than ten days and not more than two years and a fine of not less than $50 nor more than $500.

"The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1466 (1937); Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). The Sixth Amend-

---

1. Tex. Penal Code art. 63 (Vernon ed. 1952). His conviction was under the old Texas one-stage procedure upheld by the Supreme Court in Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L. Ed.2d 606 (1967). The new two-stage procedure became effective January 1, 1966. Texas Code Crim.Proc. art. 36.01 (Vernon ed. 1966).

2. Findings of Fact:
"8. Petitioner alleges that he was not represented by counsel at his trial in Cause No. 26560 for the misdemeanor offense of driving while intoxicated in Johnson County, Texas.
"9. No evidence is presented that Petitioner was denied counsel at his trial of the misdemeanor offense of driving while intoxicated. To the contrary, however, by his sworn testimony in this Court the Petitioner stated: 'I saw no need to hire a lawyer when I could pay $50.00 and get loose.'
"10. Petitioner admitted to having been in business for himself at the time of the conviction for the misdemeanor of driving while intoxicated and testified that he made approximately $6,000.00 out of his business that year."
Conclusions of Law:
"3. Petitioner effectively waived counsel at the trial of his misdemeanor conviction of driving while intoxicated at which time he pled guilty."

ment's guarantee is one of the fundamental rights made obligatory upon the states by the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). It is firmly established that the right to assistance of counsel when entering a plea applies in state as well as federal tribunals. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). And it is now beyond question that *Gideon* is to be applied retroactively.

The majority opinion sets out all the evidence there is in this case tending to show intelligent and competent waiver of assistance of counsel—the statement of defendant eighteen years later, "I didn't see a reason for hiring a lawyer when I could pay the fifty dollars and get turned aloose"; the meaningless boilerplate entry quoted by the majority.; and the fact that the appellant said he made $6,000 a year.[3] This evidence is not sufficient. It seems to me inescapable that evidence which otherwise would be summarily held insufficient to constitute waiver of assistance of counsel is held sufficient in this case for two reasons, the statement about $6,000 a year and the feeling, though not reached as an issue, that the appellant really was not entitled to counsel anyhow.

Determining whether constitutional requirements of assistance of counsel are met where the accused pleads guilty without counsel necessitates two areas of inquiry. Is the accused indigent and must counsel be offered him? Does he choose to proceed without assistance of counsel by reason of electing not to employ counsel if financially able or by reason of rejecting the appointment of counsel if indigent? The majority speak of "waiver of counsel" without differentiation between waiving appointment of counsel where required by indigency and waiving assistance of counsel. These two waivers usually coalesce into one in the case of the indigent. Only the second waiver, that of assistance of counsel, is of significance to the non-indigent. But where the defendant is not indigent it is all too easy—as has happened here—for the question whether there is waiver of assistance of counsel to get inextricably entangled with the issue of whether he was entitled to have counsel appointed, with the result that the right of the non-indigent to assistance of counsel is overwhelmed by the focus on, and force of, the factual determination that the state of his pocketbook didn't require counsel be appointed.

Certainly the majority cannot mean that the Sixth Amendment right to assistance of counsel is confined to indigents. The duty to appoint counsel for the indigent is drawn from the Sixth Amendment, not vice versa.[4] The majority must mean that on inquiry into alleged waiver of assistance of counsel by

---

3. Stubblefield's testimony was that he was arrested late in the evening and spent four or five hours of the night in jail. He paid a professional bondsman $10 to get him out. The next morning he appeared before the county judge who did not question him or inform him of his rights. The judge did not tell him he could or could not have a lawyer—"It wasn't nothing like that mentioned." He did not tell the judge he wanted a lawyer. He talked to no attorney about representing him. Part of the testimony in the habeas court was:

Q. I see. Did you tell the judge that you wanted a lawyer?
A. No, sir.
Q. Did you try to hire a lawyer?
A. No, sir.
Q. Why didn't you?
A. I didn't know I was supposed to have a lawyer.
Q. Whether you were supposed to have one or not, did you want a lawyer?
A. Well, I didn't have—I didn't see a reason for hiring a lawyer when I could pay the fifty dollars and get turned aloose.
Q. You figured you had already paid ten, and that was enough?
A. Yes, sir.

4. See, e. g., Harvey v. State of Mississippi, 340 F.2d 263 (5th Cir. 1965), in which there is no suggestion that the accused was indigent.

a non-indigent, defendant's financial status has evidentiary relevance. But the evidentiary effect is confined in this case to circumstantial evidence of his state of mind, i. e., since he was able to hire a lawyer and did not he must have intended to proceed without counsel. But appellant's state of mind is not in dispute, for he candidly described it as exactly what the evidence of financial status would tend to show it was. There is neither evidence nor contention that appellant communicated to the trial judge his annual income (or anything else about counsel).

Turning now to the issue of waiver, on plea of guilty, of assistance of counsel by the accused—indigent and non-indigent alike—there are several questions that must be answered:

—How much must the accused know before his decision to proceed without assistance of counsel can be effective?

—What is the role of the trial court? How much must it do and say?

—What must the accused, having sufficient knowledge to make a decision about proceeding without counsel, do or say to adequately evidence his choice?

    (1)  What must the accused, possessing sufficient knowledge, do or say?

The habeas court found an effective waiver in the single phrase of the appellant on oral testimony, "I saw no reason to hire a lawyer when I could pay fifty dollars and get a-loose." [5] The district judge equated this to his own exercise of judgment in paying $2 fines for parking tickets found under the windshield wiper. His full statement concerning waiver, made at the end of the hearing, is set out in the margin.[6] The habeas court considered as a waiver, and dispositive of the case, that appellant thought he didn't need a lawyer. Appellant's 1966 description of his totally subjective 1948 conclusion is not a constitutionally effective waiver, in fact not a waiver of anything, effectual or otherwise. There is no evidence, and no one has contended, that appellant communicated his state of mind to the trial judge or anyone else. An unarticulated state of mind, stark and alone, cannot be a waiver.

Johnson v. Zerbst recognizes that a purpose of the Sixth Amendment is to protect the layman from his own lack of professional skill to defend himself in the criminal courts. The layman "needs the aid of counsel lest he be the victim. * * * of his own ignorance or bewilderment." Williams v. Kaiser, 323 U.S. 471, 475, 65 S.Ct. 363, 89 L.Ed. 398 (1945). It loses sight of this principle to allow the unspoken state of mind of the unschooled layman to strip him of his Sixth Amendment guarantees. Nor can a state of mind be made into a waiver by

5. Thus this is not a case of the habeas court rejecting the testimony of petitioner on credibility grounds and denying the petition because of failure to discharge the burden of proof. See Tyler v. Beto, 5 Cir. 1968, 391 F.2d 993. Denial was based—solely based—on the credited testimony of petitioner himself.

6. "I will rule that by his sworn testimony in this Court he effectively waived the assistance of counsel.

    "He testified here under oath, 'I saw no reason to hire a lawyer when I could pay fifty dollars and get loose.'

    "I will rule that that is an effective waiver of counsel, and I have waived counsel in similar situations. On occasions I have found parking tickets under my windshield wiper, and that is a misdemeanor, and in the exercise of my judgment in those cases I did exactly what Mr. Stubblefield did. I just looked around on the reverse side, and it says, I think it is two dollars, so instead of hiring a lawyer I just sent them two dollars. I am not going to say that Mr. Stubblefield's judgment was bad in that respect because it is the same judgment that I have used, and I have on many occasions made errors in judgment, as the Court of Appeals well knows, but I don't think I have made errors in judgment in paying the misdemeanor fines instead of hiring a lawyer. On those occasions I effectively waived counsel, just as I say that Mr. Stubblefield effectively waived counsel, when according to his sworn testimony he said, 'I saw no reason to hire a lawyer when I could pay fifty dollars and get loose.' That was a 1948 misdemeanor conviction."

the other elements cited by this court, the fact of a plea of guilty and a boilerplate recital in a county record.

In Knight v. Balkcom, 363 F.2d 221 (5th Cir. 1966), this court, applying *Gideon,* Johnson v. Zerbst and their progeny, in the case of an indigent, held there was no constitutionally effective waiver of counsel where the accused in a state case was specifically asked, once by the court and once by the prosecutor, whether he had a lawyer and both times communicated his opinion that he did not need one. The prosecutor testified, "I asked Mr. Knight [the accused] if he had a lawyer, and *he said he did not and didn't see why he would need one, if he entered the plea of guilty,* and received a pentitentiary sentence." (emphasis added) The trial judge specifically asked the accused "if he had a lawyer, and *he said he did not and that he did not need a lawyer since he was pleading guilty.*" (emphasis added). The opinion discusses the matter in terms both of right to assistance of counsel and to appointment of counsel.

In Hayes v. Holman, 346 F.2d 991 (5th Cir. 1965), a state case, the record stated that petitioner did not have counsel and had "announced [he was] ready for trial without an attorney." That is more than the record before us shows, but this circuit held it not sufficient to permit an inference that the right to counsel was intelligently and understandingly waived.

No magic form of words is required of the accused to show that he understands his right to assistance of counsel and intentionally waives or relinquishes it, and in the absence of affirmative act or articulated statement by the accused other evidence can be sufficiently strong to show both understanding and relinquishment.[7] But the unarticulated conclusion of an uneducated man that he doesn't think he needs a lawyer, in a proceeding where he doesn't know he is "supposed to have" a lawyer, is not enough.

Knight v. Balkcom and Hayes v. Holman ought to dispose of this case.

> (2) How much must the accused know and how much must the trial court do and say?

Inquiry into whether the accused without counsel possesses sufficient minimal knowledge to proceed without counsel ordinarily merges into the issue of the duty of the trial court, since in most instances the accused's possession of knowledge is established by a careful colloquy between trial judge and accused, a procedure now familiar to all trial judges, state and federal.

The accused, indigent or not, must know that he is entitled to assistance of counsel. It is a concomitant of the right to assistance of counsel that he be apprised of the right. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70; Knight v. Balkcom, supra; Lastinger v. United States, 356 F.2d 104 (5th Cir. 1966); United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir.), cert. denied, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964). Failure to advise the defendant of his right to counsel invalidates the plea even in the absence of a showing of prejudice, in both state and federal cases. United States ex rel. Durocher v. LaVallee, supra.

Did this defendant know enough? His state of knowledge is revealed by his testimony:

Q. Why didn't you [hire a lawyer]?

A. I didn't know I was supposed to have a lawyer.

Did the court advise him? His testimony is that it did not. The only evidence even remotely to the contrary is the recital in the clerk's fee book that defendant pleaded guilty "after being advised of his rights." Since appellant's testimony about his earnings and his 1949 state of mind were accepted as credible it is fair to assuce that his statement on this issue is true also.

---

7. The matter of establishing that defendant does understand his right to counsel, and intentionally relinquishes it, is now usually met by having him sign a waiver so stating.

An intelligent and understanding rejection or waiver of counsel, made known to the court, would eliminate the duty of the court to advise the non-indigent accused of his right to assistance of counsel. But the uncommunicated mental operation of the accused that he sees no need for a lawyer cannot dispense with the affirmative duty of the court. In *Carnley*, the Supreme Court distinguished Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957), by pointing out that in *Moore* the record showed an express declining of an offer of counsel, which thrust upon the defendant the evidentiary burden of showing his acquiescence was not sufficiently understanding and intelligent to be an effective waiver, and the court then said, "But no such burden can be imposed upon an accused unless the record —or a hearing, where required—reveals his *affirmative acquiescence.*" (emphasis added).

The accused without counsel must know more than that he is entitled to counsel. Unless he possesses and understands required minimal information neither what he says nor what he does can come to legal fruition as a waiver or relinquishment of the right to assistance of counsel. The phrases "knowing," "intelligent," and "understanding" mean just what they say. The matter must be judged "on substance, not punctilious compliance with some stylized ritual," Johnson v. United States, 344 F.2d 401 (5th Cir. 1965), an approach as valid for state cases as for federal. The only evidence of Stubblefield's possessing any information or knowldege that could make a waiver knowing, understanding and intelligent is his testimony of his own state of mind, revealing he knew the charge and that on plea and payment of a $50 fine he would be released and would lose his driver's license, and the pro forma record entries.

The constitutional right of the accused to counsel invokes the protection of the trial judge himself in determining whether there is an intelligent and competent waiver of counsel. Johnson v. Zerbst, supra.[8] Let us look at the evidence on whether the county court discharged the duties constitutionally imposed on it. Initially it should be noted that the habeas judge took judicial notice of the fact that the county court judge is not required to be an attorney. Stubblefield's testimony is he was told nothing except that he owed a $50 fine and would lose his driver's license. There are two boilerplate record entries. The judgment entry recited, "Marvin Stubblefield after being fully admonished of the consequences thereof by the County pleaded 'guilty' to the information herein, and waived a trial by jury, and submitted his cause to the court." The entry quoted by the majority, "Defendant pleaded guilty as charged, after being reminded by the judge of his rights", is from a statement by the County Clerk apparently based on a record which appears to be a record of clerk's fees. The Criminal Docket is silent.

The habeas court made no findings on these entries. We have limited the effect of mere pro forma entries as the basis for denying habeas corpus relief. In Haacks v. Wainwright, 387 F.2d 176 (5th Cir. 1968), this court said:

> The printed words in a pro forma document without more cannot serve as a haven for constitutional impingements. There can be no universal presumption of verity in such judgments which might denigrate and flaunt constitutional rights and assurances.

That this accused was a floor sander making $6,000 a year (or a millionaire for that matter) does not add to the quantum of his knowledge that must be weighed against the standards of "knowing," "intelligent" and "understanding."

8. In Davis v. United States, 376 F.2d 535 (5th Cir. 1967) this court set aside a federal conviction on plea of guilty because defendant "was requested by the trial court to plead without being instructed in any manner as to his right to the assistance of counsel in making his plea."

Nor, except for the fact that the court was not required to offer him counsel, did the state of his pocketbook lessen the responsibilities cast on the trial court which allowed him to proceed to judgment of conviction without assistance of counsel.

In considering what this accused without counsel had to know and how much the court had to tell him, we need not decide that in all cases in all jurisdictions each accused charged with a misdemeanor a repetition of which will become a felony must apprehend the effect of a repetition before he can waive assistance of counsel. Nor is the question whether if Texas is to employ a recidivist statute based on repeated felonies the Texas defendant charged with felony must apprehend the future application of the conviction before he can effectively waive counsel. The felony defendant, charged with major crime, is eyeball-to-eyeball with severe consequences. The issue before us is the much narrower one of whether if Texas is to use a recidivist statute based on repeated felonies the defendant accused in Texas of a traffic offense misdemeanor, a repetition of which can become one of the felonies, must be given that information in order for his waiver of counsel to be effective. In my opinion he must. The routine nature of a traffic misdemeanor and its relative lack of significance in the eyes of courts and accuseds—a view shown by this record to be true to form here—makes less than full information a trap to the defendant without counsel.

Much of the above discussion pertains also to whether appellant's plea of guilty could be accepted by the court as voluntarily and intelligently made. Appellant does not raise the issue in this precise form, but in this case, as in most, it is inevitably entwined with waiver of counsel.

This leads to the final point of the case, whether the proceeding was such that the Sixth Amendment requirement of assistance of counsel was applicable. In my opinion it was. Harvey v. State of Mississippi, 340 F.2d 263 (5th Cir. 1965); McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965). Pretermitting the ultimate seriousness under Texas procedures, the immediate potential penalties to Stubblefield—two years confinement, fine, loss of driver's license—were far more serious than the 90 days in jail and $500 fine of *Harvey*. The potential penalties in McDonald are not stated, but the actual penalty was six months and $250 on each of two charges. The district courts of this circuit have followed *Harvey* and McDonald. In Brinson v. State of Florida, 273 F.Supp. 840 (S.D.Fla. 1967), the "serious offense" or "significant penalty" test was applied, to require counsel in certain traffic offense misdemeanors. A traffic offense exposing to one year's imprisonment was specifically held serious. Other Fifth Circuit cases requiring counsel in misdemeanor cases are Rutledge v. City of Miami, 267 F.Supp. 885 (S.D.Fla.1967) [assault with a gun, sentence of 60 days and $500]; Petition of Thomas, 261 F. Supp. 263 (W.D.La.1966) [escape, one year] [9] Elsewhere Arbo v. Hegstrom, 261 F.Supp. 397 (D.Conn.1966), required counsel in a nonsupport case, maximum sentence one year, actual sentence one year.[10]

9. Compare Creighton v. State of North Carolina, 257 F.Supp. 806 (E.D.N.C. 1966), declining to require counsel in a state escape case.

10. Cf. Wilson v. Blabon, 370 F.2d 997 (9th Cir. 1967), in which the court assumed, without deciding, that *Gideon* applied to a misdemeanor of indecent exposure